IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOEMAC PERKINS JR., A/K/A JOEMAL MAC PERKINS, #111951, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:14-cv-02334 |
| NASHVILLE SHERIFF DEPARTMENT, DARON HALL, and CHAPLAIN MODLING, | ) Judge Trauger ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

Plaintiff Joemac Perkins Jr., a prisoner or pretrial detainee in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, brought this *pro se* civil rights action under 42 U.S.C. § 1983 alleging a violation of his First Amendment right to practice his religion while detained. Magistrate Judge Juliet Griffin has filed a Report and Recommendation, recommending the denial of the defendants' motion to dismiss, converted to a motion for summary judgment. The defendants have filed objections to the R&R, arguing that the law applied to the undisputed facts establishes that they are entitled to judgment in their favor on the basis that the plaintiff failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The district court must conduct a *de novo* review of that portion of a magistrate judge's report and recommendation to which the defendant has filed objections. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* Having conducted such a review, the court finds, for the reasons set forth herein, that the defendants are entitled to judgment in their favor and dismissal of the complaint in this action.

## I.    Factual and Procedural Background

The verified complaint is dated December 4, 2014 and was docketed on December 9, 2014. In it, the plaintiff asserts that his rights under the First Amendment were violated when an officer with the Davidson County Sheriff's Office ("DCSO") took the plaintiff's previously approved prayer rug from him. The plaintiff alleges that when he brought the confiscation of his prayer rug and the fact that he had been

denied kosher meals to the attention of DCSO Chaplain Van Modling, the Chaplain took no action but told the plaintiff he did not "have time to worry about a prayer [rug], because Muslims can pray like anyone else, and eat what everyone else eats." (Complaint, ECF No. 1, at 3.)

The plaintiff also states that he wrote two grievances and spoke with the officers allegedly responsible for violations of the plaintiff's rights under the First Amendment. He states that he did not receive a response to the grievances and that the officers "gave me a false and run around answer report." (ECF No. 1, at 2.) He argues as a legal matter that when "prison officials do no[t] respond to a prisoner's initial grievance, administrative remedies are exhausted." (*Id.* at 4 (citing *Lewis v Washington*, 300 F.3d 829 (7th Cir. 2002).)

In support of their motion to dismiss, the defendants submitted the declaration of Tom Davis, DCSO Records Manager, who attests that (1) he is familiar with the jail's grievance policy; (2) he is custodian of the grievance records maintained by the DCSO; (3) the DCSO's grievance record for the plaintiff reveals that the plaintiff never filed a grievance related to his prayer rug. The grievance record attached to Davis's declaration does not reflect any grievances from the plaintiff relating to the confiscation of his prayer rug or his talking to Chaplain Modling about the problem.[1] It does, however, reflect that that the plaintiff submitted a grievance on January 6, 2015, more than a month after he initiated this lawsuit, stating: "I have sent several grievance forms and have not gotten a response. This makes a person feel that the grievance procedures does not work. Why? . . . . There are 5 grievances that are not answered (Kosher tray) prayer rug." (ECF No. 29-3, at 1.) According to the grievance report, the response to that grievance stated: "At this time you have no open grievances in the system. If you need copies of responses, please see your case manager." (*Id.*)

The grievance policy, attached to Davis's declaration (ECF No. 29-1), provides that grievances concerning specific instances should be filed within seven days of the incident. Grievances are to be reviewed by the grievance coordinator. If a grievance does not warrant processing, it is to be returned to the grievant. If it is worthy of processing, the grievance coordinator determines to whom it should be forwarded for a response. A response from the appropriate person is to be forwarded to the grievant

---

[1] The grievance report does reflect that the plaintiff filed two grievances related to problems with his Kosher meals on several occasions in March 2015. These grievances do not reflect that the plaintiff was denied Kosher meals altogether, as he suggests in his complaint.

within seven working days from the time the grievance is entered in the system, and must specifically indicate whether the grievance is deemed sustained or unsustained. The policy does not expressly state the procedure an inmate should follow when he does not receive a timely response to his grievance, but it does provide that "[a]n inmate dissatisfied with a grievance response may appeal it to the facility administrator . . . . Appeals should be made within five working days of receiving the response that is being appealed." (ECF No. 29-1, at 4.)

According to Davis, each inmate receives an inmate handbook that includes a summary of the grievance procedure. That summary, which is attached as an exhibit to Davis's declaration, states:

**15. GRIEVANCES**
If you have a complaint about a jail policy, practice, condition, or employee, ask for a grievance/appeal form, or write it on plain paper with "GRIEVANCE" across the top in big letters. Put it in the grievance box in your area. You have seven days, including holidays and weekends, after the matter/incident you are complaining about arises to file a grievance. That time limit may be extended only for good reason. You should get an answer within seven working days. If you don't, ask your case manager to check on it for you. If the grievance coordinator finds the grievance duplicates one you've already filed, the grievance will be returned to you without a new response.

**Grievance Appeals:** If you think the answer to your grievance is unfair, you can appeal to the facility administrator. You must file your appeal within five days of receiving your original response. Get another grievance/appeal form from your case manager or correctional officer, or write your appeal on plain paper with "GRIEVANCE APPEAL" in big letters across the top. Put it in the grievance box. You will receive an answer in seven working days. The appeal must only be based on issues from the initial grievance. If you introduce new grievances within the appeal, the appeal authority may choose to answer only issues which appear in the initial grievance.

(ECF No. 29-2.)

In their motion to dismiss, the defendants argue that the plaintiff never filed a grievance related to the claims he now seeks to advance in his complaint. They also argue that the plaintiff's ability to appeal a grievance decision is set forth in the grievance policy provided to all inmates, but that the plaintiff did not avail himself of the appeal process, an administrative remedy that was "available" to him. Instead, the plaintiff filed this lawsuit.

In her R&R, Magistrate Judge Griffin rejected the defendants' argument. She concluded, based on the language in the plaintiff's verified complaint and the notation in the grievance report submitted by the defendants, that there is a material factual dispute as to whether the plaintiff had submitted grievances concerning the issues he presents in his complaint, to which the defendants never responded. She further determined that, "[w]hen a prison inmate has attempted to use the prison grievance process

but his grievances have gone unanswered through no fault of his own, the exhaustion requirement has been satisfied for the purposes of the PLRA." (ECF No. 42, at 5–6 (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004)).) On this basis, Judge Griffin recommends that the defendants' motion to dismiss be denied.

## II.        The Defendants' Objection

In their objection, the defendants argue that Judge Griffin erred in relying on *Boyd v. Corrections Corporation of America*. They assert that the *Boyd* panel decision could not overrule an earlier Sixth Circuit decision, *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999), in which a different panel held that "an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time- barred." *Id.* at 309 (internal citations omitted).

More specifically, the defendants point out that the response to the plaintiff's January 2015 inquiry alerted him to the fact that he had no open grievances on the system. The defendants argue, based on *Hartfield*, that the plaintiff was put on notice at that point that he needed either to refile his grievances or pursue an appeal. Having already filed this lawsuit, however, he took neither course of action, effectively abandoning the grievance process.

## III.       Discussion

### A.        Legal Standard

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies *as are available* are exhausted." (Emphasis added.) Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA" and that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216. The Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.*; *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 224–25 (6th Cir. 2011). Accordingly, exhaustion is satisfied if plaintiff complied with the applicable

grievance procedures, and defendants bear the burden of showing otherwise. *See Kramer v. Wilkinson*, 226 F. App'x 461, 462 (6th Cir. 2007) (a prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants."). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by the prison's procedure. *Jones*, 549 U.S.at 218 (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). *See id.* ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

**B.    Discussion**

The question at issue here is whether the defendants, who have raised the failure to exhaust as an affirmative defense, are entitled to dismissal of the complaint on that basis. The defendants argue that the disposition in this case is governed by *Hartsfield* rather than *Boyd* and that, to the extent *Boyd* conflicts with *Hartsfield*, *Hartsfield* is controlling, because one panel of the Sixth Circuit cannot overrule the decision of another panel.

This court notes, as an initial matter, that both *Hartsfield* and *Boyd* date from the era in which it was the law of this Circuit that prisoner-plaintiffs were required to plead and demonstrate exhaustion in their initial pleadings. *See Hartsfield*, 199 F.3d at 310. The Supreme Court squarely abrogated that premise in *Jones v. Bock*, 549 U.S. 199, 216 (2007), which held that exhaustion is an affirmative defense that inmates do not need to plead specially in their complaints. *Jones* markedly changed the landscape of prisoner litigation within this district by placing the burden of establishing failure to exhaust on the defendants. To some extent, *Jones* abrogates any prior exhaustion decision from within the Sixth Circuit conducted either at the initial-review stage or on the basis of a motion to dismiss relying only on the plaintiff's initial pleading.

Second, the court finds that *Hartsfield* and *Boyd* do not conflict. In *Hartsfield* it was apparently undisputed, based on the plaintiff's initial pleading and additional briefing submitted thereafter at the magistrate judge's direction, that the plaintiff claimed to have filed a grievance on May 3, immediately

following the event that was the subject of his complaint. He wrote the grievance coordinator two weeks later, on May 16, indicating he had not received a receipt or response to his grievance. The grievance coordinator told him that no grievances had been received and he needed to refile. The plaintiff did not do so and instead filed a lawsuit. The Sixth Circuit noted that, pursuant to prison regulations, even if the prisoner had filed a grievance, "he was required to continue to the next step in the grievance process within the time frame set forth in the regulations if no response is received from prison officials or if the prisoner is not satisfied with the response." *Hartsfield*, 199 F.3d at 309 (citing Mich. Dep't of Corrs., Policy Directive 03.02.130, ¶ G). The court further reconfirmed that "an inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Id.* Because the plaintiff did not either refile after being told there was no record of his grievance, or provide a receipt showing that he filed a grievance and therefore could proceed with the appeal, the court found that he had failed to exhaust.

In other words, the court's holding was based on the plaintiff's failure to comply with the grievance procedure established by the prison, specifically his abandonment of his grievance after he was told to refile.[2] Since its issuance in 1999, the Sixth Circuit has cited *Hartsfield* primarily[3] for the premise that a prisoner "cannot simply failed to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield*, 199 F.3d at 309. And most of these cases appear to involve situations in which a prisoner *admittedly* failed to utilize a prison grievance system. *See, e.g., Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223–24 (6th Cir. 2011) (where the plaintiff alleged the grievance

[2] Subsequent district courts have on occasion construed *Hartsfield* as "affirmatively [holding] that should the authorities to whom the inmate has presented his grievance ignore his written plaint, he must proceed to the next level in the grievance process." *Malick v. Campbell*, No. 3:06CV-P-156-H, 2008 WL 314383, at *3 (W.D. Ky. Feb. 4, 2008) (citing *Hartsfield*, 199 F.3d at 309). This court concludes that such opinions read *Hartsfield*'s statements out of context. The decision in *Hartsfield* was clearly premised upon what the particular prison regulations required for exhaustion.

[3] Prior to the Supreme Court's decision in *Jones v. Bock* in 2007, *Hartsfield* was also frequently cited in support of the now-discredited premise that a prisoner-plaintiff must plead exhaustion and, where possible, attach proof of exhaustion to his complaint. *See, e.g., Gallagher v. Wilkinson*, F. App'x 453, 454–55 (6th Cir. 2003) ("Because Gallagher did not attach proof of exhaustion or describe with specificity any administrative proceedings or their outcomes, the district court properly dismissed the complaint without prejudice." (citing *Hartsfield*, 19 F.3d at 310)).

procedure was unavailable to him because he had been transferred to a different facility from the one in which his claims arose, holding that "[t]he Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable. . . . We are not requiring that a prisoner utilize every conceivable channel to grieve their case, but even when a policy is vague, a prisoner must do what is required by the grievance policy. 'We have clearly held that an inmate does not exhaust available administrative remedies when the inmate entirely fails to invoke the prison's grievance procedure.'" (quoting *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (citing *Hartsfield v. Vidor*, 199 F.3d 305, 308–09 (6th Cir. 1999)); *see also Cross v. Horton*, 80 F. App'x 430 (6th Cir. Oct. 30, 2003) (affirming dismissal for failure to exhaust where the plaintiff claimed he had not received a response to his grievances, but the record established that (1) the plaintiff had received the prison's grievance policy, which provided the right to appeal a grievance if the time for responding to the grievance expired and the respondent had neither gotten an extension of the time for responding or submitted a response; and (2) the plaintiff filed suit in court five or six days after the initial grievances were filed, without attempting to appeal); *Utley v. Hatte*, No. 99-5791, 2000 WL 331996, at *1 (6th Cir. March 22, 2000) (affirming dismissal where the plaintiff "deliberately chose not to appeal").

In *Boyd*, the factual situation was different, and the plaintiff did not simply file a grievance and then give up on the procedure. There, the district court had dismissed the claims of all fifteen plaintiffs for failure to plead exhaustion. More specifically, the court found that Boyd, the lead plaintiff, failed to allege that he "ever attempted to inquire into the state of the grievance he filed or that he utilized the appeals process." *Boyd*, 380 F.3d at 995. The Sixth Circuit disagreed, noting that Boyd alleged with specificity that he had submitted a grievance but never received a response either to his grievance or his subsequent letter to the warden. Further, however, he alleged that the prison's grievance chairperson failed to accurately log or report grievances, and that the grievance chairperson subsequently discovered that her office had been entered without authority, that grievances had been improperly removed from her office, that no action had been taken to investigate or prevent such irregularities, and that the prison's Chief of Security had acted affirmatively to destroy evidence developed in the process of investigating the problems that the plaintiffs were complaining about. He also alleged that he did not have the ability to pursue an appeal until he received a response to his initial grievance.

The Sixth Circuit noted that the district court had relied on another district court case, *Nunez v. Goord*, 172 F. Supp. 2d 417 (S.D.N.Y. 2001), which "itself, however, cites no authority for the proposition that a plaintiff is obligated to follow up on a submitted complaint in order to exhaust administrative remedies, and we have found no other case that has adopted such a rule." *Boyd*, 380 F.3d at 995. In other words, the Sixth Circuit itself apparently did not read *Hartsfield* as incorporating such a rule.

The court further observed that the district court had relied upon an unpublished district court case from California for the proposition that "failure to receive [a] response to [a] grievance [is] no excuse for not completing the process." *Id.* at 996 (citing *Jorss v. Vanknocker*, No. C97-3719CRB (PR), 2001 WL 823771, at *2 (N.D. Cal. July 19, 2001). The Sixth Circuit distinguished that case on the facts—the plaintiff in *Jorss* had pursued an informal grievance process, and the prison's failure to respond to it did not preclude him from filing a formal written grievance. By contrast, the Sixth Circuit found that in Boyd's case, under the prison regulations in effect at his place of incarceration, the prisoner "was required to wait for a grievance officer to make a decision regarding his formal grievance before he could appeal to the warden." *Id.*

The court concluded that the two district court cases on which the lower court had relied were not persuasive in Boyd's situation and, moreover, that

> several circuits have held that the exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's written grievance. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable[.]"); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) ("We join the Eighth and Fifth circuits on this issue because we refuse to interpret the PLRA 'so narrowly as to . . . permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.'"); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001) ( "[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired.").

*Boyd*, 380 F.3d at 996. "Following the lead" of these cases, the Sixth Circuit concluded, on the facts before it, that "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance." *Id.* The specific facts cited by the Sixth Circuit in support of this conclusion were that:

> (1) [the plaintiff] submitted a grievance form by giving it to a corrections officer, (2) the grievance covered "the events of the evening of August 11, 1998," (3) the grievance was

delivered to the Grievance Chairperson, who is designated in the grievance procedure as the appropriate recipient of grievances, and (4) prison officials totally failed to respond to the grievance.

*Id.* at 996. It was also notable, however, that the plaintiff affirmatively alleged that prison officials had intercepted grievances and taken steps to destroy evidence.

District courts applying *Boyd* generally construe the case as holding that, "*[u]nder certain circumstances*, 'the exhaustion requirement is satisfied where prison officials fail to timely respond to an inmate's written grievance,'" and that "to hold otherwise would permit prison officials 'to exploit the exhaustion requirement through indefinite delay in responding to grievances.'" *See, e.g.*, *Davis v. Caruso*, No. 07-CV-11740, 2009 WL 878193, at *10 (E.D. Mich. March 30, 2009) (emphasis added) (quoting *Boyd*, 380 F.3d at 996, but distinguishing that case on the facts—namely that the defendant had not "totally failed to respond to Plaintiff's grievance"—and granting summary judgment to the defendant based on the court's finding that the plaintiff had made it to Step II of the grievance process but then abandoned the process without proceeding to Step III). *See also Troche v. Crabtree*, No. 1:12-cv-176, 2015 WL 160717, at *5 (S.D. Ohio Jan. 12, 2015) (distinguishing *Boyd*, where the plaintiff alleged he could not appeal without receiving a response to his initial grievance, and finding that the plaintiff was obligated to proceed to step three of the prison's grievance process even if he had not received a response to his grievance at the earlier stages); *Scott v. Western*, No. 10-11934, 2011 WL 4387523, at *5 (E.D. Mich. Aug. 26, 2011) (dismissing plaintiff's access-to-the-courts claim that was based on prison officials' failure to process grievances, quoting *Boyd* for the principle that the "prison's failure to follow its own procedures by delaying or withholding a grievance response relieves the inmate of the exhaustion requirement" and thus would not impede the plaintiff's ability to file a lawsuit). *Malick v. Campbell*, No. 3:06-cv-156, 2008 WL 314383, at *2 n.2, *3 & n.3 (W.D. Ky. Feb. 4, 2008) (finding that the plaintiff was not excused from completing the grievance process despite alleged inaction by corrections officials, because the prison's official policy, contrary to the policy allegedly in effect in *Boyd*, provided that "[a]bsent an extension, expiration of the response time limits entitles the inmate to move on to the next step in the review process".

*Boyd* and *Hartsfield* are distinguishable on the facts. Thus, the operative question is which case governs the outcome in this action in light of the particular facts presented. On the one hand, the plaintiff

has created a disputed issue of fact as to whether he submitted one or more grievances relating to his prayer rug to which he received no response, and the defendants have not expressly addressed what DCSO procedure is when an inmate does not receive a response to a grievance. On the other hand, the plaintiff does not dispute that he was provided an inmate handbook at intake that describes the inmate grievance and appeal procedure. The plaintiff clearly was familiar with the grievance procedure and used it frequently, according to the print-out provided by Davis, and he does not allege the existence of the types of irregularities that prevailed in *Boyd*. He insists only that he "tried the grievance procedure and went to shift commanders [and] wrote the administrator." (ECF No. 33, at 1.) He does not allege, however, that he was precluded from pursuing an appeal by prison officials' failure to respond to his grievances at the initial level. Moreover, while the plaintiff apparently filed a grievance in January complaining about not receiving answers to prior grievances, including at least one grievance about the confiscation of his prayer rug, and was told that there was no grievance in the system about the prayer rug, he does not allege that he spoke with his case manager, attempted to resubmit his grievance, or pursued an appeal despite the absence of a response. Instead, he had by that time already filed his complaint in this action.

If this case were being decided based on the allegations in the initial pleading, the court would conclude, as did the court in *Boyd*, that the plaintiff's allegations were sufficient to satisfy the pleading requirement, insofar as he pleaded that he submitted a grievance form concerning the confiscation of his prayer rug and prison officials "totally failed to respond to the grievance." *Boyd*, 380 F.3d at 996. Procedurally, however, this case is more like *Hartsfield* than *Boyd*. The defendants have produced affirmative evidence that the plaintiff submitted many grievances to which they did respond, and the plaintiff was notified on January 15, 2015 that there were no open grievances in the system related to his prayer rug and that he should see his case manager. Like the plaintiff in *Hartsfield*, the plaintiff abandoned any attempt to follow up on his grievances or to appeal after not receiving a timely response. Instead, by the time he made the first half-hearted effort to follow up (by filing a grievance in January referencing earlier grievances to which no response had been received), he had already initiated this lawsuit. The court finds based on the undisputed facts in this case that, even assuming the plaintiff filed one or more grievances related to the confiscation of his prayer rug that were never answered, he

effectively abandoned the grievance procedure and filed suit without fully exhausting his administrative remedies.

## VI.    CONCLUSION

For the reasons set forth herein, the court will reject the R&R and grant the defendants' motion for summary judgment on the basis that the plaintiff failed to exhaust his administrative remedies. An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge